**WINCHESTER CAPITAL MANAGEMENT COMPANY, INC.,**

v.

**MANUFACTURERS HANOVER TRUST COMPANY.**

Civ. A. No. 91–11014–H.

United States District Court,
D. Massachusetts.

Oct. 15, 1992.

Michael Thomas Cetrone, Donald Robert Peck, Suzanne C. Auclair, Regina P. Kornfield, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Paul J. O'Donnell, John C. Kane, Ropes & Gray, Boston, Mass., for defendant.

**MEMORANDUM AND ORDER ON MOTION TO COMPEL DEPOSITION TESTIMONY AND PRODUCTION OF SUBPOENAED DOCUMENTS (# 19)**

COLLINGS, United States Magistrate Judge.

## INTRODUCTION

In 1989, the defendant (hereinafter, "Manufacturers") began to consider offering a guaranteed investment contract ("GIC") and an enhanced guaranteed investment contract ("enhanced GIC") to investors. However, it had no experience in operating GIC or enhanced GIC funds and sought to identify an organization from whom it could obtain advice with respect to these types of funds.

After an investigation during the late spring and early summer of 1989 of various firms who offered such services, Manufacturers selected plaintiff (hereinafter, "Winchester") as the entity with whom it wished .to contract. Although contract negotiations continued at least until mid–1990, no written contract was ever consummated. Winchester alleges that there was a contract, albeit not in writing; Manufacturers denies the allegation. The law firm of Nutter, McClennen & Fish represented Winchester during its contract negotiations with Manufacturers. In February, 1991, Manufacturers informed Winchester that it no longer wished to enter into a contract.

Manufacturers alleges that one of the reasons it selected Winchester as the entity with whom it would attempt to contract was that one Michael Chiusano, an individual who had special expertise regarding GICs, was a consultant to Winchester. Chiusano ceased his relationship with Winchester in 1990, and Manufacturers cites his departure as one of its reasons for its

position that a contract with Winchester was no longer desirable. Winchester alleges that this reason is "spurious" and that Chiusano and Winchester actually terminated their relationship in February, 1990. Winchester alleges that Manufacturers' asserted reason for refusing to enter into a contract with Winchester, (i.e., that Mr. Chiusano was no longer associated with Winchester) is a subterfuge and that what Manufacturers really intended was to acquire Winchester's confidential and proprietary information during the period when the contract was being negotiated.

The instant motion concerns assertions of attorney-client privilege and work-product protection in response to a subpoena *duces tecum* to Nutter, McClennen & Fish and deposition testimony concerning, in large measure, Mr. Chiusano's relationship with Winchester.

Mr. Chiusano was not an officer, director or employee of Winchester. Rather, he entered a consulting agreement with Winchester on March 25, 1988 which clearly established his status as an independent contractor vis-a-vis Winchester. In addition, the agreement makes clear that Chiusano was to be Winchester's only source of outside advice respected GIC and enhanced GIC funds. During Mr. Chiusano's negotiations with Winchester and its attorney, Nutter, McClennan & Fish, Mr. Chiusano was represented by his own separate attorney.

### DEPOSITION TESTIMONY

■ On April 13, 1988, Mr. Paul Marcus, a principal of Winchester, sought and received an Opinion Letter from Attorney Stephen M. Andress of Nutter, McClennen & Fish. Mr. Chiusano received a copy of the opinion letter, and it was discussed at a meeting between Messrs. Andress, Marcus and Chiusano. Manufacturers, presumably from some source other than Winchester, has obtained a copy of the Opinion Letter (Exhibit A to #19). Despite the fact that Manufacturers has a copy of the letter, Attorney Andress refused to answer any questions about the letter or the subse-

quent meeting at his deposition, claiming attorney-client privilege.

The Opinion Letter, by its terms, is a response to Mr. Marcus' request that he be advised "with respect to the applicability of certain provisions of the Massachusetts General Laws concerning the licensing of 'insurance brokers' and 'insurance advisers' to the proposed expansion ... of the services you provide to ... clients." It is clearly a document which provides legal advice to a client on the basis of facts which the client relates to the attorney. It is the type of document which is ordinarily privileged and intended to be confidential. Since there is no allegation that Winchester provided the copy to Manufacturers, the fact that Manufacturers now has a copy does not operate as a waiver of all communications on the subject matter.

■ Manufacturers argues, however, that since Mr. Chiusano is a "third party," the disclosure of the document to him and his presence at the discussions on the topics discussed in the letter operates as a waiver. While the general proposition is sound, as with many legal principles, there are exceptions, and, in my opinion, Mr. Chiusano, at least in the context of the Opinion Letter, falls into the exception which provides that disclosure to a third party who is identified with the party claiming the privilege and to whom disclosure is reasonable and necessary in order for all the facts to be made known to the attorney does not waive the privilege. *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 141 (D.Del., 1982) (prior employee and consultant); *Miller v. Haulmark Transport Systems,* 104 F.R.D. 442, 444–45 (E.D.Pa., 1984) (insurance agent). I find that Winchester has carried its burden of establishing its entitlement to assert the privilege as to discussions at which Mr. Chiusano was present for the purpose of transmitting to the attorney information upon which the Opinion Letter was based. The motion to compel deposition testimony as to these communications will be denied.

■ Manufacturers seeks to compel deposition testimony respecting other meetings which it has characterized as follows:

(1) Meetings between Messrs. Marcus, Andress and Chiusano where the structure of a guaranteed investment contract (GIC) business was discussed.

(2) Meetings between Messrs. Marcus, Andress, and Chiusano where Mr. Chiusano's role in GIC businesses and his professional experience were discussed.

(3) Meetings between Messrs. Marcus, John Livens (of Winchester) and Andress on June 28, 1990 discussing whether the provisions of a draft investment advisory agreement were acceptable.

(4) Whether Mr. Andress had been told prior to June 28, 1990 that Winchester had discontinued its use of Mr. Chiusano in February, 1990.

The issue with respect to these four meetings is whether any information was conveyed either from the client to the attorney or from the attorney to the client which was intended to be kept confidential. The positions of the parties may be summarized as follows:

### Manufacturer's position

With respect to the meetings between Paul Marcus and Attorney Andress, at which Mr. Chiusano was present, discussing the structuring of a guaranteed investment contract-related business, and Mr. Chiusano's role in that business, Winchester has made no showing that the communications made at the meeting were, or were intended to be, confidential.

\*　　\*　　\*　　\*　　\*　　\*

The same analysis ... applies to meetings between Paul Marcus and Steven Andress, attended by Michael Chiusano, during which Mr. Chiusano's experience in the field of guaranteed investment contracts was discussed. Moreover, Mr. Marcus' views as to Mr. Chiusano's experience (and potential value to Winchester) are hardly confidential.

\*　　\*　　\*　　\*　　\*　　\*

Upon receipt of a June, 1990 revised draft Investment Advisory Agreement for Manufacturers, Attorney Andress met with Mr. Marcus and John Livens (another Winchester principal) to discuss an upcoming meeting with Manufacturers. At that meeting, Marcus, Livens and Andress discussed whether the provisions of the draft Investment Advisory Agreement were or were not acceptable, and what would be communicated to Manufacturers regarding those provisions. Notwithstanding that the positions discussed were intended to be communicated to Manufacturers the following day (and therefore do not qualify as "confidential") Mr. Andress refused to discuss the substance of that meeting [at his deposition] on a claim of attorney-client privilege.

Memorandum in Support of Defendant's Motion to Compel Deposition Testimony, Etc. (# 20) at pp. 14–17.

### Winchester's position

[T]he legal matters discussed at the meetings concerned the strategies of structuring a business deal. Hence, the communications were not of the type where the client clearly anticipates that the communications will be publicized.

\*　　\*　　\*　　\*　　\*　　\*

Manufacturers also attempts to compel confidential communications which transpired at various meetings between Winchester and Andress. In its Memorandum, Manufacturers speculates as to the content of such communications, to which both Marcus and Andress claimed the attorney-client privilege during their depositions. Case law ... indicates that communications to an attorney which are intended to be made public are not confidential and therefore not privileged. [citations omitted] These cases do not, however, allow the unfettered inquiry into all aspects of otherwise confidential communication that Manufacturers suggests. To allow Manufacturers to probe into such confidential and privileged communications would dangerously undermine the very purpose of the attorney-client privilege.

Plaintiff Winchester Capital Management Company, Inc.'s Opposition to Defendant's Motion To Compel Deposition Testimony, Etc. (# 23), pp. 10–12.

The burden is on the proponent of the privilege, Winchester in this case, to demonstrate that the privilege is applicable. *United States v. Jones*, 696 F.2d 1069, 1072 (4 Cir., 1982) (citing cases). In demonstrating that the privilege is applicable, Winchester bears the burden of proving that the communications were intended to be kept confidential. As the Fourth Circuit wrote in the case of *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4 Cir., 1984):

> And we have adopted this view in *United States v. Jones*, 696 F.2d 1069 (4th Cir.1982) that the "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] ... by the attorney as so intended." In determining whether it was to be "reasonably assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.

■ After a careful review of all the submissions, I find that Winchester has failed to meet its burden of demonstrating that the communications made in the meetings described were intended to be kept confidential. At bottom, Winchester rests its contention on nothing more than that the communications were made between an attorney and client. As one commentator wrote:

> A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear.

McCormick, *Evidence*, § 91, pp. 187–88 (Cleary ed. 1972) quoted in *re Grand Jury Proceedings*, *supra*, 727 F.2d at 1355.

■ It is true that courts often presume from circumstances which have been demonstrated that a communication will remain in confidence. However, the circumstances which must be shown in order to invoke the presumption must be in addition to the circumstance that the communication was made between an attorney and client at a time when an attorney-client relationship existed. Winchester has not shown any additional circumstances in this case.

In addition, from what is known of the communications, it is doubtful that they were intended to be kept confidential. It is to be recalled that the intended purpose of Manufacturers' contacts with Winchester was to obtain advice with respect to GIC and enhanced GIC funds. Accordingly, absent evidence to the contrary which Winchester has not set presented, it is hardly to be presumed that information concerning (1) the structure of a guaranteed investment contract (GIC) business and/or (2) Mr. Chiusano's role in GIC businesses and his professional experience were intended to remain confidential.

Courts have also held that information which is to be communicated to the public or others is not privileged. The communications at the meeting between Messrs. Marcus, John Livens (of Winchester) and Andress on June 28, 1990 discussing whether the provisions of a draft investment advisory agreement were acceptable were not intended to be confidential because whether or not the provisions were acceptable was communicated to Manufacturers at a meeting the following day. *See United States v. (Under Seal)*, 748 F.2d 871, 874–875 (4 Cir., 1984); *United States v. Jones, supra*, 696 F.2d at 1072–1073.

■ Lastly, information as to whether Mr. Andress had been told prior to June 28, 1990 that Winchester had discontinued its use of Mr. Chiusano in February, 1990 is not privileged. The asserted fact, i.e., that Winchester did discontinue its use of Mr. Chiusano in February, 1990, was revealed to Manufacturers by Winchester at the time Winchester filed its Complaint in this case. Even if the information was communicated to Mr. Andress prior to June, 1990 and was intended at that time to be held in confidence, the confidentiality has been waived by subsequent disclosure of the fact.

■ There is another reason why the circumstances of these communications are not such as to support a presumption that the communications were intended to be held confidential. With the exception of the opinion letter, which has been previously discussed, it is not at all clear that any of the other communications were made for the purpose of obtaining legal as opposed to business advice. If what was occurring during the relevant time periods was that Winchester and Manufacturers were intending to enter into a joint business venture, communications respecting the structure of a guaranteed investment contract (GIC) business, Mr. Chiusano's role in GIC businesses and his professional experience, the parties' positions on the acceptability of the provisions of a draft investment advisory agreement, and whether Winchester had discontinued its use of Mr. Chiusano in February, 1990 would all seem related to obtaining business as opposed to legal advice. Further, given the proposed business arrangement between the parties, it hardly seems reasonable to presume that such information would be considered confidential as between the parties themselves.

In sum, I find that Winchester has failed to sustain its burden of demonstrating the applicability of the attorney-client privilege as to the following:

(1) Meetings between Messrs. Marcus, Andress and Chiusano where the structure of a guaranteed investment contract (GIC) business were discussed.

(2) Meetings between Messrs. Marcus, Andress, and Chiusano where Mr. Chiusano's role in GIC businesses and his professional experience were discussed.

(3) Meetings between Messrs. Marcus, John Livens (of Winchester) and Andress on June 28, 1990 discussing whether the provisions of a draft investment advisory agreement were acceptable.

(4) Whether Mr. Andress had been told prior to June 28, 1990 that Winchester had discontinued its use of Mr. Chiusano in February, 1990.

The motion to compel deposition testimony as to these areas will be allowed.

## SUBPOENAED DOCUMENTS

■ With respect to the question of the assertion of the attorney-client privilege as to documents, the facts are that Manufacturers caused a subpoena *duces tecum* to be served on the law firm of Nutter, McClennen & Fish commanding the firm to bring certain documents to a 30(b)(6) deposition of the firm. The documents were listed in Schedule B to the Notice of Taking Deposition. *See* # 9. The subpoena was served on the firm; no objections to the subpoena were served and no motion to quash was filed before the date on which the deposition was taken, but at the deposition, the law firm refused to produce some of the documents asserting attorney-client privilege. Manufacturers claims that the failure to object to the subpoena before the date on which the deposition was to be taken and the documents were to be produced constitutes a waiver of the privilege.

The Notice of Deposition (# 9) was filed on November 6, 1991 for a scheduled deposition on November 20, 1991. However, the deposition did not occur until January 21, 1992. Rule 45(d), Fed.R.Civ.P. (eff. 12/1/91) provides:

**(d) Duties in Responding to Subpoena.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the ordinary course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim.

This provision would seem to imply that despite the fact that a person subpoenaed to produce documents **may** file and serve an objection within fourteen days of service or before the time for compliance whichev-

er is sooner (Rule 45(c)(2)(B)), or file a timely motion to quash on the grounds that the subpoena requires disclosure of privileged matter (Rule 45(c)(3)(A)(iii)), a subpoenaed party is not required to do so in the case of documents withheld on attorney-client or work-product grounds before "responding" to the subpoena in accordance with Rule 45(d)(2), Fed.R.Civ.P., at the time set for compliance. The rule may be otherwise in the case of other objections to a subpoena *duces tecum*[1] but the rule as amended appears to permit assertion of the attorney-client privilege or work-product protection at the time for compliance with the subpoena regardless of whether an objection or motion to quash has been filed prior to the time set for compliance.

█ Accordingly, I do not find a waiver by Nutter, McClennen & Fish on account of its failure to serve an objection or file and serve a motion to quash before the date set for compliance with the subpoena. However, it does not appear that the law firm complied with the requirement of Rule 45(d)(2), Fed.R.Civ.P., that its claim of attorney-client privilege "... be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable [Manufacturers] to contest the claim."[2] In addition, because of Manufacturers' primary reliance on the waiver issue, I cannot discern from the papers in the file which of the documents listed in Schedule B have been withheld.

Accordingly, I shall deny the motion to compel documents without prejudice. Hopefully, the rulings I have made herein with respect to the deposition testimony will provide sufficient guidance to counsel so that the matter of the documents can be agreed upon. If agreement cannot be reached, the law firm shall, *on or before the close of business on October 29, 1992*, file and serve a listing of each document withheld together with a "description" of each document as required by Rule 45(d)(2), Fed.R.Civ.P. Manufacturers may thereafter file a motion to compel production of any document(s) which Manufacturers believes is being improperly withheld.

## CONCLUSION

For the reasons set forth herein, it is ORDERED that the Motion To Compel Deposition Testimony and Production of Subpoenaed Documents (# 19) be, and the same hereby is, ALLOWED to the extent that the deponents Nutter, McClennen & Fish, Stephen M. Andress, Esquire, and Paul J. Marcus are ORDERED, pursuant to Rule 37(a)(2), Fed.R.Civ.P., to give testimony as to:

(1) Meetings between Messrs. Marcus, Andress and Chiusano where the structure of a guaranteed investment contract (GIC) business was discussed.

(2) Meetings between Messrs. Marcus, Andress, and Chiusano where Mr. Chiusano's role in GIC businesses and his professional experience were discussed.

(3) Meetings between Messrs. Marcus, John Livens (of Winchester) and Andress on June 28, 1990 discussing whether the provisions of a draft investment advisory agreement were acceptable.

(4) Whether Mr. Andress had been told prior to June 28, 1990 that Winchester had discontinued its use of Mr. Chiusano in February, 1990.

It is FURTHER ORDERED that the Motion To Compel, Etc. (# 19) be, and the same hereby is, DENIED to the extent that it seeks an Order compelling other deposition testimony. It is FURTHER ORDERED that the Motion To Compel, Etc. (# 19) be, and the same hereby is, DENIED WITHOUT PREJUDICE to the extent that

---

**1.** *See Williams v. Keenan*, 106 F.R.D. 565, 566–67 (D.Mass., 1985) (construing former Rule 45(d)(1), Fed.R.Civ.P.).

**2.** It may well be that if a party who receives a subpoena *duces tecum* to produce documents does not (1) file a timely objection or (2) file a timely motion to quash, and, in addition, does not either (3) assert a claim of attorney-client privilege expressly or (4) provide the description required by Rule 45(d), Fed.R.Civ.P., that party will be found to have waived the protection of the attorney-client or work-product privilege as to the documents commanded by the subpoena.

it seeks an Order compelling production of documents listed in Schedule B to the Notice of Taking Deposition (# 9) which have been withheld on the ground of attorney-client privilege or work-product protection.