The CITY OF SPRINGFIELD, Plaintiff,

v.

REXNORD CORPORATION and Rhi Holdings, Inc., Defendants.

No. Civ.A.99–30106–MAP.

United States District Court, D. Massachusetts.

Aug. 16, 2000.

Patricia T. Martinelli, Peter P. Fenton, Harry P. Carroll, City of Springfield Law Department, Springfield, MA, for Plaintiffs.

Berndt W. Anderson, Robert P. Landau, Roberts, Carroll, Feldstein & Peirce, Providence, RI, for Defendants.

*SUPPLEMENTAL MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO COMPEL (Docket No. 27)*

NEIMAN, United States Magistrate Judge.

In response to the City of Springfield ("Plaintiff")'s request for production, Rexnord Corporation and RHI Holdings, Inc. ("Defendants") refused to produce certain documents for which they claim protection under either an attorney-client privilege or the work-product doctrine, causing Plaintiff to file a motion to compel. In accord with this court's order of June 20, 2000 (Docket No. 37), Defendants produced the documents under seal for the court's in camera review. Having reviewed the documents and the parties' memoranda and after hearing oral argument, the court will require Defendants to produce some but not all of the documents in question.

### STANDARDS

■ The attorney-client privilege protects communications between client and attorney for the purpose of obtaining legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. 677. "[T]he interest in preserving a durable barrier against disclosure of privileged attorney-client information is shared both by particular litigants and by the public, and it is an interest of considerable magni-

tude." *Siedle v. Putnam Investments, Inc.,* 147 F.3d 7, 11 (1st Cir.1998). The shelter afforded by the privilege, however, "only protects disclosure of communication; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.,* 449 U.S. at 395, 101 S.Ct. 677. Thus, the scope of the attorney-client privilege is fact sensitive and must be addressed on a case-by-case basis. *Id.* at 396–97, 101 S.Ct. 677.

■ The work product doctrine, on the other hand, provides a means by which a party may protect its trial preparation materials. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Although the doctrine is "intertwined" with the attorney-client privilege, *Harding v. Dana Transp., Inc.,* 914 F.Supp. 1084, 1089 (D.N.J. 1996) (citing *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)), its purpose differs: "The attorney-client privilege exists to keep inviolate confidences of clients to their attorneys, thereby presumably enhancing the communication exchange. The work product doctrine, however, seeks to enhance the quality of professionalism within the legal field by preventing attorneys from benefitting from the fruit of an adversary's labor." *Id.* at 1096. *See also Hickman,* 329 U.S. at 511, 67 S.Ct. 385 (describing fundamentals of work product doctrine).

### DISCUSSION

Defendants' claims of privilege are grounded in their assertion that the documents at issue were prepared by them or their in-house counsel in preparation for or in anticipation of litigation. To be sure, the documents were not prepared in anticipation of the *instant* litigation. If they were prepared in anticipation of any litigation, and that is somewhat questionable, it was possible litigation with the Massachusetts Department of Environmental Quality Engineering ("DEQE") nearly twenty years ago.

■ Moreover, it is not entirely clear that the key lawyer mentioned in the documents, Aaron Hardt ("Hardt"), Defendants' in-house counsel, was always acting in his capacity as

an attorney. Of course, a corporation may invoke the attorney-client privilege for in-house counsel. *See, e.g., In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984); *Borase v. M/A COM, Inc.,* 171 F.R.D. 10, 14 (D.Mass. 1997); *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 360 (D.Mass.1950). However, an in-house lawyer may wear several other hats (e.g., business advisor, financial consultant) and because the distinctions are often hard to draw, the invocation of the attorney-client privilege may be questionable in many instances. *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs,* 60 F.3d 867, 884 (1st Cir.1995); *Borase,* 171 F.R.D. at 14; *Rossi v. Blue Cross & Blue Shield of Greater N.Y.,* 73 N.Y.2d 588, 542 N.Y.S.2d 508, 540 N.E.2d 703, 705 (1989); *North Am. Mortgage Investors v. First Wisconsin Nat'l Bank,* 69 F.R.D. 9, 11 (E.D.Wis.1975). The present case presents one such instance.

■ Defendants formed an in-house team, in which Hardt was involved, to deal with the DEQE investigation. As the above cases indicate, the fact that Hardt may have performed certain legal functions as part of that team does not render privileged each communication made by or copied to him, particularly if the communication could equally well have been made to or by an individual without a law degree. *See also F.C. Cycles, Int'l Inc. v. Fila Sport, S.p.A.,* 184 F.R.D. 64, 71 (D.Md.1998) (holding that "routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged statute solely because in-house or outside counsel is 'copied in' on correspondence or memoranda"); *United States Postal Service v. Phelps Dodge Ref.'g Corp.,* 852 F.Supp. 156, 163–64 (E.D.N.Y.1994) (noting that "[a] corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel"). In the court's view, a document must have been intended to be confidential

and made for the purpose of giving or obtaining legal advice to be vested with the attorney-client privilege. Moreover, "so long as the communication is primarily or predominantly of a legal character, the privilege is not merely lost by reason of the fact that it also dealt with nonlegal matters." *Rossi,* 542 N.Y.S.2d 508, 540 N.E.2d at 706.

■ With these standards in mind, and after reviewing the documents themselves, the court finds that eight documents which were penned by either Hardt or J.S. Eastham, Defendants' attorneys, or drafted with Hardt's assistance, reflect communications protected by the attorney-client privilege:

1. Hardt's September 23, 1983 handwritten notes;

2. Hardt's August 30, 1982 – May 2, 1983 handwritten notes;

3. February 15, 1983 letter from Hardt to J. Landry;

4. September 30, 1982 memorandum from J.S. Eastham to Hardt;[1]

5. September 14, 1982 background memorandum by J.R. Luecke;

6. September 15, 1982 memorandum by J.R. Luecke;

7. October 4, 1982 background memorandum by J.R. Luecke; and

8. October 5, 1982 memorandum by J.R. Luecke.

The court finds, however, that two documents, which may have been prepared with Hardt's assistance, must be provided to Plaintiff nonetheless:

1. September 28, 1981 Standby Statement; and

2. October 4, 1982 Standby Statement.

These two documents were prepared in anticipation of media inquiries and thus represent Defendants' public, albeit potential, statements.

---

1. With respect to this document, it should be noted that at least one court had concluded that an in-house counsel was acting in his business, rather than legal, capacity when he negotiated the environmental provisions of an asset purchase agreement. *Georgia–Pacific Corp. v. GAF Roofing Manufacturing Corp.,* 1996 WL 29392 (S.D.N.Y.1996). The court does not believe that the reasoning behind that decision, which has engendered some controversy, *see* Marc C. Van Deusen, *The Attorney–Client Privilege for In-House Counsel When Negotiating Contracts: A Response to Georgia–Pacific Corp. v. GAI Roofing Manufacturing Corp.,* 29 Wm. & Mary L.Rev. 1397, 1399 (1998), applies to the purchase and sale agreement which is the subject of this document.

The remaining documents, the court finds, are not protected by the attorney-client privilege. There is little if anything in these documents that evidences an attorney presenting issues and analyzing claims with an eye toward applicable law.

■ The only question therefore is whether these remaining documents are protected by the work product doctrine to the extent they were prepared, as Defendants assert, in anticipation of litigation (albeit with the DEQE) rather than in the ordinary course of business. *See Scott Paper Co. v. Ceilcote Co.*, 103 F.R.D. 591, 595 (D.Me.1984); *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C.1982). As Defendants are aware, the burden is on the party resisting discovery to demonstrate in the first instance that the materials sought are indeed work product within the scope of the rule. *See Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D.Mass.1992); *Sham v. Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24, 25 (D.Mass.1987); *Fairbanks v. Am. Can Co.*, 110 F.R.D. 685, 687 (D.Mass. 1986).

■ The court will shortcut the issue and, for purposes here, accept Defendants' assertion that the remaining documents were prepared in anticipation of litigation. Unlike the attorney-client privilege, however, which is usually absolute if not waived, the work-product doctrine, as partially codified at FED. R.CIV.P. 26(b)(3), has its limits. In particular, an inquiring party may obtain discovery of documents and tangible things prepared in anticipation of litigation providing he shows a "substantial need" for the materials and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED.R.CIV.P. 26(b)(3).[2] One such substantial need, for example, may be for statements taken from parties or witnesses at the time of an incident. *See Tiernan v. Westext Transp., Inc.*, 46 F.R.D. 3, 3–4 (D.R.I.1969). Such statements are unique in that they provide a contemporaneous impression of the facts. *Id.* A significant lapse

of time may make it impossible to obtain the substantial equivalent of the material sought. *Phillips v. Dallas Carriers Corp.*, 133 F.R.D. 475, 480–81 (M.D.N.C.1990).

Here, there is little doubt with respect to many of the remaining documents, that a substantial need exists and that it would be practically impossible for Plaintiff to obtain the substantial equivalent of the information without undue hardship. The documents are nearly twenty years old and Defendants admit that some of the participants' whereabouts are unknown.

In this vein, the court adds one final point with respect to the work product doctrine. Rule 26(b)(3) contemplates two types of work product, each with its own level of immunity: "ordinary" work product, for which a party must demonstrate a "substantial need," and "opinion" work product with greater immunity. *In Re: San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014–15 (1st Cir. 1988). *See also Upjohn Co.*, 449 U.S. at 399–400, 101 S.Ct. 677 (noting special need to protect attorney's mental impressions and legal theories) (citing *Hickman*, 329 U.S. at 514, 67 S.Ct. 385); n. 2, supra. Here, the documents at issue, if work product they are, are of the ordinary kind.

After further review, the court orders that the following documents must be disclosed to Plaintiff even though they may have been authored by or written or copied to Defendants' attorneys. There is no indication that these particular documents were intended to be confidential or reflect an attorney's mental impressions or legal theories. These documents include the following:

1. September 17, 1982 letter from Hardt to J. Landry;

2. October 8, 1982 letter from Hardt to J. Landry;

3. November 4, 1982 letter from Hardt to P. Erickson;

4. October 5, 1982 memorandum from Al Marshall to Hardt; and

---

**2.** The rule cautions, however, that "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

5. September 29, 1982 memorandum from J.A. Bartels to Hardt (together with attachments).

For similar reasons, the court orders that the following documents be produced as well, but redacted as described:

1. March 23, 1983 memorandum from Hardt to J. Landry, redacting therefrom (i) the second, third and forth sentences in the first paragraph on page one, and (ii) the first sentence on page three;

2. October 22, 1982 memorandum from Hardt to Paul Erickson, redacting therefrom the second paragraph; and

3. April 12, 1983, memorandum from Hardt to J. Landry, redacting therefrom (i) the last sentence in the second paragraph, and (ii) the last paragraph.

In addition, the court orders that the following documents be produced in their entirety, even though they may have been prepared at Hardt's request, insofar as they reflect information for which Plaintiff has a significant need and which could not be obtained otherwise without undue hardship:

1. Alan Marshall's August 30, 1982 handwritten notes of Felix Salzano interview; and

2. September 28, 1981 (possibly 1982) Memo to "789P" from Doug Hermann.

Any other document not specifically addressed in this memorandum and order need not be produced.

IT IS SO ORDERED.